# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**DAVID N. JAMES**                                                                              **PLAINTIFF**

**v.**                                Case No. 4:16-cv-00835-KGB

**ERIC CHEATHAM,** *et al.*                                                          **DEFENDANTS**

## OPINION AND ORDER

Plaintiff David N. James brings this action *pro se* under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments of the United States Constitution against defendants North Little Rock Police Officer Eric Cheatham ("Officer Cheatham") and Chief of the North Little Rock Police Department Mike Davis ("Chief Davis"), in both their individual and official capacities (Dkt. No. 2). Defendants Officer Cheatham and Chief Davis move for summary judgment (Dkt. No. 51). Mr. James has not responded to the motion for summary judgment, despite filing several other documents during the relevant time (Dkt. Nos. 55, 57). For the following reasons, the Court grants the motion for summary judgment.

     **I.**     **Factual Background**

The following facts are taken from Officer Cheatham and Chief Davis's statement of undisputed material facts in support of motion for summary judgment, to which Mr. James did not respond (Dkt. No. 53-1). Pursuant to Local Rule 56.1(c) of the Local Rules of the United States District Court for the Eastern District of Arkansas, all material facts set forth in defendants' statement of material facts shall be deemed admitted unless controverted by a statement filed by plaintiff. Mr. James did not file a statement controverting Officer Cheatham and Chief Davis's filing. Therefore, the Court deems admitted the facts stated by Officer Cheatham and Chief Davis.

Mr. James is an African-American male, who was arrested by former North Little Rock Police Officer Cheatham on July 28, 2015, for fleeing and failure to submit to arrest. Officer

Cheatham is also an African-American male, formerly employed as a police officer by the City of North Little Rock, Arkansas. Officer Bruce Moyster is a current police officer with the City of North Little Rock, Arkansas.

On July 28, 2015, at approximately 4:49 p.m., Officer Moyster advised over the police radio that he was attempting to apprehend an African-American male wearing a black shirt who was fleeing from Officer Moyster on foot. Officer Moyster advised the subject he was chasing was last seen around the 2100 block of Schaer.

Officer Cheatham arrived in the area of the 2100 Schaer moments later, and Officer Cheatham began traveling west in the 800 block of West 21st Street. Officer Cheatham observed an African-American male with no shirt quickly walking east on West 21st Street. However, the individual was carrying a black shirt and unknown shiny object in his left hand. Officer Cheatham exited his car and began walking toward the individual. The individual, later identified as Mr. James, looked at Officer Cheatham, asked, "What did I do?" and then fled on foot from Officer Cheatham toward West 22nd Street. Officer Cheatham engaged in a foot pursuit.

Officer Cheatham gave several commands for Mr. James to stop and identified himself as a police officer. Nevertheless, Mr. James continued to flee. Mr. James fled toward a residence marked "707" and Officer Cheatham briefly lost sight of him. Officer Cheatham then noticed Mr. James hiding in bushes; once Mr. James noticed Officer Cheatham, Mr. James again fled south toward the opposite side of the residence.

Mr. James then lost his footing and fell to the ground; he was then laying on his stomach with his hands, the t-shirt, and the unknown shiny object underneath his body. Officer Cheatham gave Mr. James two loud commands to show his hands which remained under Mr. James's body.

Mr. James refused to comply with either command. Officer Cheatham perceived a threat due to the shiny object and Mr. James's refusal to reveal it.

Due to the threat Officer Cheatham perceived, he deployed his department issued Taser at Mr. James. Officer Cheatham deployed one five-second cycle of projectile probes at Mr. James, which struck Mr. James in his upper back and the back of Mr. James's right arm. Following the use of the Taser, Officer Cheatham again gave Mr. James commands to remove his hands from underneath his body and to place them to his sides with his palms up. At this time, Mr. James complied. The shiny object was determined to be sunglasses. Medical personnel responded to the scene and removed the Taser probes from Mr. James.

Sergeant Kenneth Livingston was made aware of the incident, as he was patrol sergeant. Sergeant Livingston reviewed the incident and spoke to witness Erma Sheard and determined that the incident was compliant with Police Department policy. Ms. Sheard did not indicate in her written statement any information contrary to what Officer Cheatham relayed to Sergeant Livingston. Chief Davis had no involvement in the arrest of Mr. James, in the use of the Taser against Mr. James, and was not present at the scene.

Officer Cheatham attended Black River Technical College for law enforcement training, ending in November 2012. He received 620 hours of law enforcement training at Black River Technical College. Officer Cheatham received his Bachelor's Degree in Criminology from Arkansas State University in May 2012. Officer Cheatham was hired by North Little Rock in August 2012 as a patrol officer. He received inter-departmental training at the North Little Rock Police Department on subjects including, but not limited to, Taser Training, Racial Profiling, and Defense Tactics before the incident involving the arrest of Mr. James in July 2015.

The City of North Little Rock has specific policies regarding officers' use of force, officers' requirements to report uses of force, and the use of Tasers. The City of North Little Rock investigates complaints of wrongdoing against police officers and, where sustained, discipline up to and including termination is imposed. Use-of-force incidents are likewise investigated by various personnel within the police department to determine compliance with policy and the law.

A background investigation was conducted on Officer Cheatham prior to his hire with the City of North Little Rock. Such investigation included a criminal history check through the National Crime Information Center ("NCIC") and the Arkansas Crime Information Center ("ACIC"), a background check from the Federal Bureau of Investigation, a review of Officer Cheatham's employment history, a psychiatric evaluation for fitness for duty, a polygraph examination, personal interviews, and interviews with personal references listed by Officer Cheatham. The only thing the background investigation revealed were a couple of prior traffic infractions.

Following the use of the Taser, Mr. James was seen at the Emergency Room and prescribed a non-narcotic pain reliever due to alleged "tingling with sharp pain," allegedly from being tased. However, it was noted that Mr. James appeared "comfortable" and in "no acute distress." While Baptist Health has additional records of pain prescriptions given to Mr. James following his arrest in July 2015, none of them are related to the arrest or Taser as is clear from the records themselves.

Mr. James was convicted of fleeing in North Little Rock District Court regarding his arrest by Officer Cheatham and that conviction was not overturned.

**II.     Discussion**

Defendants move for summary judgment on all of Mr. James's claims and allege that Mr. James claims: "discrimination, racial profiling, excessive force, and harassment" against Officer

Cheatham; that Officer Cheatham violated Mr. James's Eighth and Fourteenth Amendment rights by using allegedly excessive force during Mr. James's arrest; and that Officer Cheatham violated the Equal Protection Clause by allegedly arresting Mr. James based on his race (Dkt. No. 52, at 1). Defendants maintain that Mr. James alleges against Chief Davis failure to train Officer Cheatham, failure to supervise Officer Cheatham, and an allegedly inadequate hiring decision regarding Officer Cheatham's hire (*Id.*, at 1-2). Further, Mr. James claims a "widespread custom of excessive force and untruthfulness. . ." which defendants characterize as "presumably against the City of North Little Rock." (*Id.*, at 2).

### A. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue of material fact for trial. *UnitedHealth Group Incorporated v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Claims Against Officer Cheatham

Liability may be imposed against defendants in individual capacity suits even if the violation of a plaintiff's federally protected right was not attributable to the enforcement of a governmental policy or practice. To establish individual liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Defendants contend that Officer Cheatham is entitled to summary judgment on all claims against him or, in the alternative, to qualified immunity on Mr. James's claims against Officer Cheatham in his individual capacity. To overcome the defense of qualified immunity, Mr. James must show: (1) that Officer Cheatham violated a statutory or constitutional right and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Foster v. Mo. Dep't of Health & Senior Servs.*, 736 F.3d 759, 762 (8th Cir. 2013) (quoting *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012)). "If the answer to either question is no" then a defendant is entitled to qualified immunity for individual capacity claims. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010). The Court may take up these questions in either order. *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017);

*Foster*, 736 F.3d at 763. "For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). The law is clear if it gives the official "fair warning" that his conduct violated an individual's rights when the officer acted. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). If the allegations and undisputed facts do not amount to a constitutional violation, there is no necessity for further inquiries concerning qualified immunity. *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007); *Ambrose v. Young,* 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) (standard of review explained).

1. **Equal Protection Claims**

A person arrested by police, allegedly because the arrestee is a member of a protected or suspect class, may assert an equal-protection claim under the Fourteenth Amendment. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003) (quoting *Whren v. United States,* 517 U.S. 806, 813 (1996)). This Court will examine Mr. James's claims of discrimination, racial profiling, and harassment against Officer Cheatham, and Mr. James's claims that Officer Cheatham violated the Equal Protection Clause by allegedly arresting Mr. James based on his race, as claims brought pursuant to the Equal Protection Clause. Such claims for intentionally discriminatory application of laws are properly brought under the Equal Protection Clause. *Id.* There is no requirement that a plaintiff prove lack of probable cause to bring such a claim. Instead, the plaintiff must prove that the defendant exercised his discretion to enforce the law on account of an individual's membership in a protected or suspect class, which requires proof of both discriminatory effect and discriminatory purpose. *Johnson*, 326 F.3d at 999-1000 (citing *United States v. Armstrong,* 517 U.S. 456, 465 (1996)). When the claim is selective enforcement of the traffic laws or a racially-

motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose. *Johnson*, 326 F.3d at 999-1000 (citing *Chavez v. Ill. State Police,* 251 F.3d 612, 634-48 (7th Cir.2001); *Gardenhire v. Schubert,* 205 F.3d 303, 319 (6th Cir. 2000)).

In response to defendants' motion for summary judgment, Mr. James fails to present record evidence that Officer Cheatham intentionally discriminated against Mr. James. Mr. James has come forward with no record evidence of other similarly situated individuals who are not members of the protected or suspect class and who were not pursued and arrested by Officer Cheatham. As a result, Mr. James fails to make a showing of the requisite discriminatory effect and purpose. Construing all record evidence in Mr. James's favor, the Court concludes that no reasonable juror could find for Mr. James on his equal-protection claims against Officer Cheatham in his individual capacity. As a result, the Court grants defendants summary judgment in their favor on Mr. James's equal-protection claims against Officer Cheatham in his individual capacity.

Because the Court grants summary judgment in favor of defendants on this basis, the Court declines to reach the merits of defendants' argument based on *Heck v. Humphrey*, 512 U.S. 477 (1994), as applied to Mr. James's equal-protection claims.

### 2. Excessive Force Claim

Mr. James also claims that Officer Cheatham used excessive force against him when arresting him in violation of the Eighth Amendment. However, Mr. James was not a convicted person at any time relevant to the events giving rise to this claim. As a result, his excessive force claim should be analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Officer Cheatham first contends that, based on his conviction, Mr. James is precluded from bringing a Fourth Amendment claim contending that there was a lack of probable cause to arrest him. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994). After the events giving rise to this lawsuit, Mr. James was convicted of fleeing in North Little Rock District Court regarding his arrest by Officer Cheatham and that conviction has not been overturned. Further, even if Mr. James was not the suspect Officer Moyster was seeking, Mr. James sufficiently matched the description of that person, was in the same vicinity as that person being pursued by Officer Moyster, and failed to obey Officer Cheatham's commands at several points during this incident. "The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested." *Graham*, 490 U.S. at 396 (citing *Hill v. California*, 401 U.S. 797 (1971)).

To the extent Mr. James alleges that Officer Cheatham used excessive force in arresting him, the Fourth Amendments' objective reasonableness standard is used to analyze all claims that a law enforcement officer has used excessive force, whether deadly or not, in the course of an arrest, investigatory stop, or other seizure. *Nance v. Sammis*, 586 F.3d 604, 609-10 (8th Cir. 2009) (citing *Graham*, 490 U.S. at 388). In deciding whether an officer's use of force was excessive, the Court must determine whether the amount of force used was reasonable under the totality of circumstances confronting the officer. *Copeland v. Locke*, 613 F.3d 875, 881 (8th Cir. 2010) (citations omitted). The inquiry is objective, "without regard to [the officer's] underlying intent or motivation." *Graham*, 490 U.S. at 397. Factors bearing on the inquiry include, among other things, "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (quoting *Graham*, 490 U.S. at 396). It is clearly established that force is least justified against nonviolent misdemeanants

who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public. *Id.* (citing *Graham*, 490 U.S. at 396); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007); *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006); *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002)).

Construing all reasonable inferences in favor of Mr. James, the undisputed record evidence establishes that Mr. James substantially matched the description of a person fleeing in the vicinity from Officer Moyster. Upon seeing Officer Cheatham, and after Officer Cheatham gave Mr. James several commands for Mr. James to stop and identified himself as a police officer, Mr. James disobeyed the verbal commands and fled. Mr. James had a black shirt in one hand and a shiny object in the other. Mr. James fell down on the ground, and his hands along with the shiny object were tucked underneath his body. Officer Cheatham gave Mr. James two loud commands to show his hands which remained under Mr. James's body. Despite Officer Cheatham's commands to show his hands, Mr. James refused. Officer Cheatham perceived a threat due to the shiny object and Mr. James's refusal to reveal it. It is undisputed that, at that point, Officer Cheatham deployed his Taser via the prongs on the Taser for one five-second cycle.

After that, Mr. James complied and showed his hands. The shiny object was determined to be sunglasses, and medical personnel were called to tend to Mr. James by removing the Taser probes. Mr. James was taken into custody. Undisputed record evidence demonstrates that Mr. James was prescribed non-narcotic pain relievers as a result of this incident. Further, although his medical records indicate prescriptions for other pain relievers after his arrest, the medical records indicate they were prescribed for other issues, not related to the use of the Taser.

The Court determines that, based on the record evidence and the *Graham* factors, Officer Cheatham's use of the Taser in this case was not unreasonable or excessive. "A threat to an

officer's safety can justify the use of force in cases involving relatively minor crimes and suspects who are not actively resisting arrest or attempting to flee." *Brown v. City of Golden Valley*, 574 F.3d 491, 497~~6~~ (8th Cir. 2009). A reasonable officer on the scene could have interpreted Mr. James's actions as a threat to officer safety, given the shiny object under him, his refusal to obey commands to show his hands, his conduct in running from Officer Cheatham, and his refusal to obey commands to stop fleeing. As a result of Mr. James's conduct, a reasonable officer on the scene could have responded with an amount of force that was reasonable to effect the arrest. *See Brossart v. Janke*, 859 F.3d 616, 624-25 (8th Cir. 2017); *De Boise v. Taser Intern., Inc.*, 760 F.3d 892, 897-98 (8th Cir. 2014); *Carpenter v. Gage*, 686 F.3d 644, 649-50 (8th Cir. 2012). As a result, the Court grants summary judgment in favor of defendants on Mr. James's Fourth Amendment excessive force claim against Officer Cheatham in his individual capacity.

### C. Claims Against Chief Davis

Mr. James asserts three claims against Chief Davis in his individual and official capacities. Mr. James asserts claims based on failure to train, failure to supervise, and inadequate hiring with regard to Officer Cheatham.

A claim against a state or municipal official in his or her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a result, the same standard applies to the claims Mr. James asserts against Chief Davis and Officer Cheatham in their official capacities. A plaintiff suing a municipality under § 1983 for the acts of its employees must prove that a municipal employee committed a constitutional violation and that a municipal policy or custom was the moving force behind the constitutional deprivation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Specifically, a municipality may be liable based upon: (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2)

a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority." *City of St. Louis v. Praprotnick*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

There is no allegation that Chief Davis participated in the events giving rise to Mr. James's arrest and claims. The same standard applies for official capacity and individual capacity claims against Chief Davis. *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). Further, Chief Davis may not be held liable for unconstitutional conduct under a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

It is well-established that § 1983 claims based on alleged deficient hiring or failure to train and supervise employees require proof that: (1) the City's practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting them, such that the failure to hire, train, or supervise reflects a deliberate or conscious choice by the City; and (3) an alleged deficiency in the hiring, training, or supervising procedures actually caused the plaintiff's injury. *B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012) (citing *Parrish*, 594 F.3d at 997). To prevail, Mr. James must prove that the need for more or different training or hiring procedures was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymaker of the City can reasonably be said to have been deliberately indifferent to the need. *Id.* Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness. *Id.* (citing *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004)). Mr. James must also demonstrate that the City had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. *Andrews*, 98 F.3d at 1076 (internal quotation and citation omitted). An isolated violation by one who is not a final

policy maker is insufficient to establish a municipal policy or custom. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion).

"Without a constitutional violation by the individual officer[], there can be no § 1983 or *Monell* . . . municipal liability." *Hayek*, 488 F.3d at 1055 (quoting *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)).

This Court determines that Officer Cheatham did not violate Mr. James's constitutional rights. As a result, Chief Davis in his individual and official capacities cannot be held liable under § 1983 for failure to train, failure to supervise, or deficient hiring procedures. Moreover, on the undisputed record evidence, Mr. James fails to establish a *prima facie* case for failure to train, failure to supervise, or deficient hiring procedures. Mr. James has come forward with no record evidence of a custom or pattern of unconstitutional conduct, that Chief Davis or the City were purportedly aware of such a pattern of unconstitutional conduct, or that Chief Davis or the City were allegedly deliberately indifferent to or tacitly authorized any unconstitutional conduct, including but not limited to unconstitutional conduct that purportedly caused or was highly likely to cause Mr. James's alleged injury. For these reasons, defendants are entitled to summary judgment in their favor on Mr. James's claims against Chief Davis in his individual and official capacities. Further, defendants are entitled to summary judgment in their favor on Mr. James's claims against Officer Cheatham in his official capacity.

### III. Conclusion

For these reasons, the Court grants defendants' motion for summary judgment, grants judgment in favor of defendants, and dismisses with prejudice Mr. James's remaining claims. Mr. James's request for relief is denied.

It is so ordered this 12th day of September, 2019.

_____
Kristine G. Baker
United States District Judge